IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| PHILADELPHIA INDEMNITY ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 6:15-cv-03030-MDH |
| ) | |
| COMMUNITY FOUNDATION ) | |
| OF THE OZARKS, INC., ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Defendant's Motion for Partial Summary Judgment on the "Claims Made and Reporting" Issue. (Doc. No. 24). The motion has been fully briefed and is now ripe for review.

## BACKGROUND

Philadelphia Indemnity Insurance Company ("Philadelphia") filed a Complaint against Community Foundation of the Ozarks ("CFO") for declaratory relief regarding a coverage dispute. Philadelphia issued a "claims made" policy to CFO for the policy period July 1, 2011 to July 1, 2012. Philadelphia states to be covered by the policy, "a claim" must be first made against the insured during the policy period and reported to Philadelphia in writing as soon as practicable, but no later than 60 days after the expiration date of the policy. The same coverage was then renewed for the period July 1, 2012 to July 1, 2013. Both policies insured against D&O wrongful acts and define a "claim" to mean "a written demand for monetary or non-

1

monetary relief." Further, pursuant to the policy a "D&O wrongful act" includes any "act, error, omission, misstatement, misleading statement, neglect, [or] breach of duty."

The underlying dispute stems from a claim made by Springfield Community Center, Inc. ("SCC"), through its President and CEO Calvin Allen, over a $500,000 deposit made with CFO in 2004. Beginning in approximately September 2011, SCC, through Mr. Allen, began to request the return of the $500,000. After multiple discussions between SCC and CFO, in which Mr. Allen, or his counsel, requested information about the funds and/or that the funds be made available, SCC eventually filed a lawsuit against CFO in April 2013 in the Circuit Court of Greene County, Missouri.

On April 17, 2013, CFO submitted a claim for coverage to Philadelphia for the SCC claim. Philadelphia subsequently filed this action seeking declaratory relief regarding its insurance coverage. The pending motion for summary judgment argues CFO's notice was untimely and therefore coverage for the SCC claim is not available under the policies.

## FACTUAL HISTORY

Beginning in September 2011, Mr. Allen met with Mr. Fogle and Susanne Gray, CFO's Chief Financial Officer, to request the return of $500,000 he had originally deposited with CFO in 2004. On October 19, 2011, CFO's Executive Committee discussed Mr. Allen's request for the return of the funds and the records reflect they were "aware Mr. Allen was going to seek legal counsel." On December 8, 2011, counsel for SCC wrote to Mr. Fogle and stated "The purpose of this letter is to inquire concerning the existence of an account which was opened, and an agreement concerning the same…" The letter continues, "My client informs me that the time has come for it to direct the payment of the account, plus its earnings, to the Springfield Community Center, Inc. However, recent contacts with the Community Foundation have raised

2

questions about whether the Fund is available for use by the Springfield Community Center, Inc."

In January 2012, a meeting was held with representatives from CFO and SCC that included legal counsel for both entities. After the meeting, counsel for SCC wrote a letter dated January 26, 2012, to counsel for CFO stating:

> Pursuant to our conversation today at the Community Foundation of the Ozarks office, please provide documentation as to transfers of the $500,000 fund. You also indicated you could get us an address and/or telephone number for Gary Funk. I have heard that part of the funds were used to purchase tax credits. Could you give me some additional information regarding that subject, and the use of the tax credits? Please give me a call regarding this matter.

On January 30, 2012, Mr. Allen personally wrote a letter to Mr. Fogle requesting that CFO disburse all amounts from the fund to SCC and further stated "I request that a valid check in the amount of $500,000.00 plus the accrued interest be sent to me made payable to the Springfield Community Center."

On February 15, 2012, the CFO Executive Committee met and discussed that it was time to tell the Board about the "Calvin Allen issue." The minutes reflect that the committee discussed that: "CFO has received a second letter requesting funds on Calvin Allen's behalf. Lawyers representing Mr. Allen have been directed to also visit with Brooks Miller and Gary Funk." Later that same day, the Board met and was informed that CFO was being represented by Doug Nickell regarding "recent communication with Calvin Allen." Mr. Fogle told the Board "he didn't think CFO had financial liability, but did mention we did not have a well-documented file on the overall transaction between all the parties."

On February 27, 2012, Mr. Nickell wrote to counsel for SCC acknowledging a prior discussion and letter. Mr. Nickell stated: "The letter basically requested payment of $500,000 plus interest from the Springfield Community Center Minority Foundation Capacity Building

3

Fund." On March 28, 2012, CFO's Executive Committee minutes reflect that counsel for Allen is "still considering the merits of a legal action" and that there was no further correspondence with Mr. Allen requesting funds. CFO did not hear anything further from Mr. Allen or his legal counsel until it received a letter dated April 9, 2013.

The April 9, 2013 letter was written by a new attorney for Mr. Allen, Jay Kirksey, who stated the following:

> Springfield Community Center, Inc., had made a prior demand and request that the Community Foundation of the Ozarks return and make immediate payment and access of the $500,000.00 conveyed to it on March 2, 2004.
>
> Pursuant to 408.040 RSMo. consider this correspondence to also be a demand of payment by CFO of the $500,000.00, with any interest accrued, as received and paid to the order of CFO on March 2, 2004…

The $500,000.00 was not returned by CFO to SCC and SCC filed a state court action regarding the return of the funds.

## THE POLICY LANGUAGE

The 2011-2012 policy was a "claims made" policy that stated "claims made policies only cover those claims made against the insured during the policy period." The policy period was July 1, 2011 through July 1, 2012. "Claim" is defined as:

1) any written demand for monetary or non-monetary relief; or

2) any judicial civil, administrative, regulatory, or arbitration proceeding (including any appeal there from), which subjects an **Insured** to a binding adjudication of liability for monetary or non-monetary relief for a **Wrongful Act**; or

3) any written request to toll or waive any statute of limitations applicable to any actual or potential suit or cause of action against an **Insured**.

However, **Claim** shall not include a labor or grievance proceeding pursuant to a collective bargaining agreement.

4

Under the "Notice/Claim Reporting" condition, CFO must provide notice of a claim to Philadelphia "as soon as practicable" after first becoming aware of such claim, but no later than 60 days after the expiration date of the policy. The 2012-2013 policy included the same terms and conditions.

## STANDARD OF REVIEW

Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp., v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party is entitled to summary judgment as a matter of law if they can establish there is "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). The Court must view the evidence in the light most favorable to the nonmoving party. *Woodsmith Publ'g Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir. 1990). Once the moving party has established a properly supported motion for summary judgment, the non-moving party cannot rest on allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc..* 477 U.S. at 248.

Courts must "enforce insurance contracts as written unless an ambiguity requires the court to impose various rules of interpretation." *Missouri Pub. Entity Risk Mgmt. Fund v. Inv'rs Ins. Co. of Am.*, 451 F.3d 925, 927 (8th Cir. 2006); citing, *Hunt v. Everett*, 181 S.W.3d 248, 250 (Mo.Ct.App. 2006). The 8th Circuit has stated that Courts "construe ambiguous provisions in an insurance policy against the insurer." *Id.* However, the Court should "not distort unambiguous policy language to create an ambiguity." *Id.*, citing *Haulers Ins. Co. v. Wyatt*, 170 S.W.3d 541, 546 (Mo.Ct.App. 2005).

5

**DISCUSSION**

The parties do not dispute the language of the policy and agree the policy is a "claims made" policy. The parties further agree that CFO was obligated to provide notice of a "claim" "as soon as practicable," but no later than 60 days after the expiration date of the policy. The policies define "claim," in part, as "any written demand for monetary or non-monetary relief." The basic facts surrounding the communications between CFO and SCC are largely undisputed. Therefore, the issue before the Court is whether prior to Mr. Kirksey's April 9, 2013 letter, CFO was on notice of a "claim," or a written demand for monetary relief, by SCC that would have required CFO to notify Philadelphia under the terms of the policy. For the reasons stated herein, this Court finds that the letters and communications prior to Mr. Kirksey's April 9, 2013 letter do not constitute a "claim," or a written demand for monetary relief as defined in the relevant Philadelphia policies.

A claims made policy provides coverage for a claim made against the insured that is brought to the insurer's attention during the term of the policy. *Lexington Ins. Co. v. St. Louis Univ.*, 88 F.3d 632, 633-34 (8th Cir. 1996) (internal citation omitted). The 8th Circuit has stated with a claims made policy "notice is not simply part of the insured's duty to cooperate." *Id.* at 634. Rather, "it defines the limits of the insurer's obligation - if there is no timely notice, there is no coverage." *Id.* A claims made policy "allows the insurer to more accurately fix its reserves for future liabilities and compute premiums with greater certainty." *Id.*, citing *FDIC v. St. Paul Fire & Marine Ins. Co.*, 993 F.2d 155, 158 (8th Cir. 1993).

"Like many states, Missouri has adopted regulations prohibiting unfair insurance claims settlement practices." *Id.* One of those regulations provides: "No insurer shall deny any claim based upon the insured's failure to submit a written notice of loss within a specified time

6

following any loss, unless this failure operates to prejudice the rights of the insurer." *Id.*, citing 20 Mo.Code Regs. § 100-1.020(4). The 8th Circuit, in *Esmailzadeh*, held that a comparable Minnesota regulation did not apply to claims made policies and that unless there is timely notice, the claim is not covered. *Id.* (stating "excusing tardy notice would alter a basic term of the insurance contract"); citing, *Esmailzadeh v. Johnson & Speakman*, 869 F.2d 422, 424 (8th Cir. 1989). The Missouri Courts of Appeals have followed *Esmailzadeh*, and held that "an insurer need not prove prejudice to avoid coverage under a claims made policy if the claim was not reported until after the policy expired." *Id.*, citing *Insurance Placements, Inc. v. Utica Mut. Ins. Co.*, 917 S.W.2d 592, 597 (Mo.App. 1996); *Continental Casualty Co. v. Maxwell*, 799 S.W.2d 882, 886-87 (Mo.App. 1990).

Philadelphia argues SCC first made a claim against CFO on January 30, 2012,[1] and that CFO failed to report the claim within the time period specified by insurance policy. Philadelphia contends the claim is therefore not covered by the 2011-2012 policy. On January 30, 2012, Mr. Allen wrote a letter to Brian Fogle, President of CFO. The letter states the following:

> Enclosed please find a copy of the agreement dated March 31, 2004 between Springfield Community Center, and the Community Foundation of the Ozarks. Pursuant to the second paragraph of the agreement, please consider this the request of Springfield Community Center that the Community Foundation of the Ozarks disburse all amounts from the fund, to include principal and interest, to Springfield Community Center.
>
> I am also enclosing a copy of the letter dated March 11, 2004 from Gary Funk, President of Community Foundation of the Ozarks, which identifies the original amount of the fund as $500,000.00.
>
> I request that a valid check in the amount of $500,000.00 plus the accrued interest be sent to me made payable to the Springfield Community Center.

---

[1] January 30, 2012 is the date of a letter from Mr. Allen to Mr. Fogle. There is nothing in the record regarding the date CFO actually received the letter.

7

Philadelphia argues this letter was notice of a "claim." However, this Court disagrees. The letter from Mr. Allen to CFO requests payment of funds he believed he was entitled to pursuant to an enclosed agreement. The January 30, 2012 letter does not, however, contain a "demand" for monetary or legal relief beyond return of money he believed was deposited with the Defendant. The letter simply requests distribution of funds pursuant to an agreement that Mr. Allen believes entitle him to a payment. In other words, at the time of this letter Mr. Allen's request was for performance of an agreement or contract he believed entitled him to funds. His letter was not a demand for damages or monetary "relief," nor was it an accusation of a breach of the terms of the agreement or contract at the time it was written. In fact, there is no indication at the time of this letter that Mr. Allen believes he will not receive the money. Further, there is no indication in Mr. Allen's letter that he is accusing CFO of any wrongdoing, or that CFO does not intend to comply with Mr. Allen's request.

In addition, there is no evidence of any allegations of a wrongful act on the part of CFO, or its officers and directors, prior to the April 9, 2013 letter from Mr. Kirksey. Rather, a review of the record indicates requests were made for information regarding the $500,000.00, documentation of the agreement between CFO and SCC, performance of the terms of the agreement, and/or the payment of the funds to SCC. The Court finds that at no time prior to Mr. Kirksey's letter is there any evidence of a written "demand" alleging a wrongful act on the part of CFO that would fall under a covered wrongful act under the Policies.[2]

---

[2] Based on the evidence before the Court at this time, the Court does not find evidence of any oral claim made upon CFO. However, the definition of "claim" as set forth in the relevant

Philadelphia argues this letter was notice of a "claim." However, this Court disagrees. The letter from Mr. Allen to CFO requests payment of funds he believed he was entitled to pursuant to an enclosed agreement. The January 30, 2012 letter does not, however, contain a "demand" for monetary or legal relief beyond return of money he believed was deposited with the Defendant. The letter simply requests distribution of funds pursuant to an agreement that Mr. Allen believes entitle him to a payment. In other words, at the time of this letter Mr. Allen's request was for performance of an agreement or contract he believed entitled him to funds. His letter was not a demand for damages or monetary "relief," nor was it an accusation of a breach of the terms of the agreement or contract at the time it was written. In fact, there is no indication at the time of this letter that Mr. Allen believes he will not receive the money. Further, there is no indication in Mr. Allen's letter that he is accusing CFO of any wrongdoing, or that CFO does not intend to comply with Mr. Allen's request.

In addition, there is no evidence of any allegations of a wrongful act on the part of CFO, or its officers and directors, prior to the April 9, 2013 letter from Mr. Kirksey. Rather, a review of the record indicates requests were made for information regarding the $500,000.00, documentation of the agreement between CFO and SCC, performance of the terms of the agreement, and/or the payment of the funds to SCC. The Court finds that at no time prior to Mr. Kirksey's letter is there any evidence of a written "demand" alleging a wrongful act on the part of CFO that would fall under a covered wrongful act under the Policies.[2]

---

[2] Based on the evidence before the Court at this time, the Court does not find evidence of any oral claim made upon CFO. However, the definition of "claim" as set forth in the relevant

Further, Philadelphia argues the claim is not covered under the 2012-2013 policy because the claim arose during the previous policy year. However, Philadelphia's argument is that the "policy provides coverage only where the demand for monetary or non-monetary relief was *first made* against the insured during the policy period of July 1, 2012 to July 2, 2013." Philadelphia argues CFO received a written demand for the return of $500,000 from SCC in January 2011[3] at the latest. Philadelphia further argues because the "interrelated wrongful act" relates to a claim first made during the 2011-2012 policy period coverage does not exist when it is a "loss" arising out of the same event. However, this Court does not find that a "claim" was made prior to the April 2013 letter from Mr. Kirksey and therefore, further analysis of this argument is unnecessary.

Wherefore, because the Court does not find that the January 30, 2012 letter, or any correspondence prior to April 2013, constitute a claim against CFO, the Court denies Plaintiff's motion for partial summary judgment.

### CONCLUSION

Wherefore, for the reasons set forth herein, the Court **DENIES** Philadelphia's Motion for Partial Summary Judgment (Doc. No. 24).

**IT IS SO ORDERED.**

DATED: March 3, 2016

                                              */s/ Douglas Harpool*
                                              **DOUGLAS HARPOOL**
                                              **UNITED STATES DISTRICT JUDGE**

---

policies specifically refers to "written demands" and does not include any reference to oral communications.

[3] The Court believes Philadelphia intended to reference the January 30, 2012 (not 2011) letter from Mr. Allen.